UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TYLER BANKS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:25-cv-00080-SNLJ |
| | ) |
| JOSEPH WHISTLER, BRYAN BLANNER, | ) |
| ZANE HULVEY, and | ) |
| CITY OF CAPE GIRARDEAU, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tyler Banks filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that defendants Joseph Whistler, Bryan Blanner, and Zane Hulvey used excessive force during a traffic stop and arrest in violation of the Fourth Amendment. [Doc. 1]. He also asserts a municipal liability claim against the City of Cape Girardeau. [*Id.*]. This matter is before the Court on the defendants' motion to dismiss [Doc. 11] and motion to file exhibits under seal [Doc. 14]. For the reasons stated below, the motion to dismiss is granted in part and denied in part, and the motion to file exhibits under seal is denied.

## I. LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering such a motion, a court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). A complaint must allege sufficient facts to "state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether well-pleaded factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task that requires the court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 682.

## II. BACKGROUND

**A. Allegations against defendants Whistler, Blanner, and Hulvey**

On July 20, 2024, just before 9:07 a.m., defendant Joseph Whistler initiated a traffic stop of plaintiff Tyler M. Banks for an alleged minor traffic violation. [Doc. 1]. Banks was driving within the posted speed limit but was accused of a lane violation. [*Id.* at ¶¶ 14, 18]. After activating the emergency lights and siren on his patrol car, Whistler notified dispatch that Banks was failing to yield. [*Id.* at ¶¶ 21, 22]. Whistler followed Banks for approximately one mile on Southern Expressway in the City of Cape Girardeau, Missouri. [*Id.* at ¶ 23]. When Banks stopped at a stop sign, Whistler quickly exited his patrol car and immediately aimed his department-issued Taser X26 at Banks, who was still seated inside his vehicle. [*Id.* at ¶ 25]. Whistler then placed the Taser on the seat of his patrol car, drew his department-issued 9mm Glock firearm, and aimed it at Banks, who was still seated in his vehicle. [*Id.* at ¶ 26].

Banks then slowly exited his vehicle with his hands raised above his head. [*Id.* at ¶ 27]. As he stepped out, Whistler shouted, "show me your hands and do not get out of the car" and "turn around and face away from me." [*Id.* at ¶¶ 28, 29]. Banks turned

2

away from Whistler, keeping his hands extended in the air.  [*Id.* at ¶ 30].  Whistler then yelled, "just stand there, if you do anything else you are going to get dog bit."  [*Id.* at ¶ 34].  Banks reached to close the driver's door with his left hand, while his right hand remained raised, prompting Whistler to respond, "don't shut the f***ing door."  [*Id.* at ¶ 36].  Whistler then picked up the Taser in his right hand and, with his firearm in his left hand, aimed both at Banks.  [*Id.* at ¶ 37].  By this time, 25 seconds had elapsed since Whistler exited his patrol car.[1]  [*Id.* at ¶¶ 25-37].

Three seconds after Banks began closing the door, he briefly faced his vehicle, and Whistler shouted at Banks to face away from him.  As Banks turned away, Whistler shouted, "stop moving," and Banks stopped.  [*Id.* at ¶¶ 40-41].  At that moment, Banks was facing away from Whistler with his hands raised and remained still.  [*Id.* at ¶ 42-43].  Without warning, Whistler discharged his Taser, striking Banks in the back and delivering a five-second cycle of 50,000 volts of electrical current.  [*Id.* at ¶ 42].  Whistler then yelled, "turn around and face away from me or you will get hit with it again," and four seconds later, yelled, "don't f***ing move."  [*Id.* at ¶¶ 44-45].  Banks was still facing away with his hands raised.  [*Id.* at ¶ 46].

Defendant Bryan Blanner arrived 59 seconds after Whistler exited his patrol car.  [*Id.* at ¶¶ 25-47].  Blanner immediately exited his vehicle, aimed his department-issued Taser X26 at Banks while rushing toward him, yelled "on the ground," and then discharged the Taser, delivering a second five-second cycle of 50,000 volts.  [*Id.* at ¶¶ 47-

---

[1] The Complaint includes a detailed timeline of the events by hour, minute, and second.

3

49]. Only two seconds had elapsed. [*Id.*]. Whistler simultaneously discharged his Taser, striking Banks and delivering a third five-second cycle of 50,000 volts. [*Id.* at ¶ 50]. Banks fell, hitting his head, neck, and back on the concrete. [*Id.* at ¶ 51]. Approximately four seconds after Blanner and Whistler discharged their tasers, Banks lost consciousness. [*Id.* at ¶¶ 48-53].

While Banks lay unconscious on the ground, Blanner forcibly knelt on Banks's back, and defendant Zane Hulvey knelt on Banks's neck. [*Id.* at ¶ 54]. As a result of their actions, Banks sustained rib fractures and a concussion. [*Id.* at ¶ 54]. Banks was transported directly to jail. [*Id.* at ¶ 56]. Later, Banks was charged with a class B misdemeanor for driving while intoxicated and a class A misdemeanor for resisting a lawful stop. [*Id.*]

**B.      Allegations against City of Cape Girardeau**

Banks alleges that, prior to the events in question, there were reports and lawsuits regarding the use of excessive force by officers of the Cape Girardeau Police Department (CGPD), including Whistler. [*Id.* at ¶¶ 57, 58, 59]. He claims that City of Cape Girardeau officials knew about officers' use of excessive force and intentionally decided not to take any corrective measures. [*Id.* at ¶¶ 57, 58, 59, 89, 90, 91, 92, 96, 97, 98]. He also claims that the City of Cape Girardeau's failure to address officers' use of excessive force led to the actions of defendants Whistler, Blanner, and Hulvey in this matter. [*Id.* at ¶¶ 96, 97, 98]. Banks supports his claim against the City of Cape Girardeau by presenting three specific instances of alleged use of excessive force by officers, including Whistler. Additionally, he references a history of excessive force allegations against

4

Whistler, as reported in a newspaper article about an investigation into a fatal pursuit.

1. *Teater v. Farrow, et al.*

On August 28, 2023, Robert Teater filed a lawsuit under 42 U.S.C. § 1983 alleging that Whistler and five other officers used excessive force during an incident in March 2021. *See Teater v. Farrow, et al.*, No. 1:23-cv-00145-SNLJ, Doc. 1 (E.D. Mo. Aug. 23, 2023) ("Teater").[2] Teater claimed the CGPD officers beat him, tased him, and knelt on his back, which resulted in rib fractures. [Doc. 1 at ¶ 59]; *see also Teater* at [Doc. 1]. Media sources reported that the City of Cape Girardeau reached a financial settlement with Teater but did not discipline the officers for using excessive force. [Doc. 1 at ¶ 58]; see also Teater at [Docs. 19, 20].].

2. *Mosley v. Whistler, et al.*

On July 19, 2022, Ryan Scott Mosley filed a lawsuit under 42 U.S.C. § 1983 alleging that Whistler and another officer used excessive force during an incident in April 2022. *See Mosley v. Whistler, et al.*, No. 1:22-cv-00096-SNLJ, Doc. 1 (E.D. Mo. July 19, 2022) ("Mosley"). Mosley claimed that the officers beat him, tased him, knelt on his back, and kicked him in the head, causing him to lose consciousness. [Doc. 1 at ¶ 58]; *see also Mosley* at [Docs. 1, 20]. Media sources reported that the City of Cape Girardeau reached a financial settlement with Mosley, but did not discipline the officers for using excessive force. [Doc. 1 at ¶ 58]; *see also Mosley* at [Doc. 21].

---

[2] A federal district court may *sua sponte* take judicial notice of other judicial proceedings if they relate to the matters at issue. *Conforti v. United States*, 74 F.3d 838 (8th Cir. 1996).

5

### 3. *Gilmore v. Cape Girardeau City Police, et al.*

On February 23, 2022, Lloyd Gilmore, proceeding *pro se*, filed a lawsuit under 42 U.S.C. § 1983 alleging officers used excessive force during an incident in May 2020. *See Gilmore v. Cape Girardeau City Police, et al.*, No. 1:22-cv-00022-AGF (E.D. Mo. Feb. 23, 2022) ("Gilmore"). Gilmore claimed that while he was handcuffed and shackled at the ankles, he was beaten and tased multiple times by the officers, and that after he was placed in a patrol car, the beating and tasing continued. [*Id.* at Doc. 65]. The case is scheduled for a jury trial later this year. [*Id.* at Docs. 120, 133].

### 4. *Investigation of fatal pursuit*

On April 23, 2025, the Southeast Missourian reported that authorities were investigating a fatal vehicle pursuit involving Whistler. [Doc. 1 at ¶ 60]. It was reported that Whistler has a history of allegations of excessive force against him. [*Id.*]. The article also mentioned that Whistler has been involved in multiple altercations resulting in injuries requiring hospital care, and that the City of Cape Girardeau settled two cases related to these incidents. [*Id.*].

## III. DISCUSSION

### A.   Count I – Fourth Amendment claim

Banks alleges that Whistler, Blanner, and Hulvey ("CGPD officers") used excessive force during the traffic stop and arrest. "The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (cleaned up). "To establish a constitutional violation under the

6

Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Z.J. by & through Jones v. Kansas City Bd. of Police Commissioners*, 931 F.3d 672, 681 (8th Cir. 2019). "[I]f a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 952 (8th Cir. 2024).

The CGPD officers argue that they are protected by qualified immunity and, therefore, Count I must be dismissed. "Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Watkins*, 102 F.4th at 951 (cleaned up). "Because qualified immunity is an affirmative defense, ... it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Id.* "To overcome qualified immunity at the motion to dismiss stage, a Banks must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (cleaned up).

The CGPD officers request that the Court take judicial notice of body camera recordings and Banks's guilty plea to driving while intoxicated and resisting a lawful stop. [Doc. 12 at 6]. They submitted the evidence with their briefing and request that it be filed under seal. [Doc. 14]. When considering a Rule 12(b)(6) motion to dismiss, the court generally must disregard materials outside the pleadings. However, the court may

7

consider materials that are part of the public record, do not contradict the complaint, or are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "Videos of an incident are necessarily embraced by the pleadings." *Ching as Tr. for Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). The court is not obligated to accept a version of events alleged in a complaint that is "blatantly contradicted" by video evidence. *Id.*

The CGPD officers' account of the events, as described in their briefing based on the body camera recordings, does not blatantly contradict the version of events alleged in the Complaint. [Doc. 12 at 2-5]. Neither does Banks's guilty plea. Therefore, the Court will accept Banks's well-pleaded factual allegations as true and draw all reasonable inferences in his favor.

The CGPD officers argue that their use of force was justified because Banks was noncompliant, first by failing to yield and then by ignoring the officers' commands. "Resistance, however, should not be understood as a binary state, with resistance being either completely passive or active." *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). "Rather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Id.* And because resistance may change throughout an encounter, each separate use of force must be evaluated on its own for reasonableness. *Smith v. Conway County, Ark.* 759 F.3d 853, 860 (8th Cir. 2014) (finding that even if an initial tasing was justified, a second tasing could be unreasonable in an evolving situation). "[A] reasonable officer is not permitted to ignore changing circumstances." *Masters v. City of Indep., Missouri*, 998 F.3d 827,

8

836 (8th Cir. 2021).

The factors to consider when evaluating the objective reasonableness of the force used include:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Cravener v. Shuster*, 885 F.3d 1135, 1138-39 (8th Cir. 2018).  Regarding the use of a taser, courts have considered whether officers attempted less intrusive alternatives before resorting to a taser and whether they warned the individual about its potential use.  *Id.* at 1139-40.  "Force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public."  *Masters v. City of Independence, Missouri*, 998 F.3d 827, 835 (8th Cir. 2021).

Here, the allegations in the Complaint are sufficient to state a Fourth Amendment claim against Whistler and Blanner for their use of force through taser deployments— twice by Whistler and once by Blanner—under the circumstances presented. Additionally, the allegations in the Complaint are sufficient to state a Fourth Amendment claim against Blanner and Hulvey regarding the force used during the handcuffing of Banks, who was unconscious on the ground.

The CGPD officers also argue that Banks has not established that a violation of a clearly established law under the specific facts and circumstances of this case.  The notion that there must be an identical case for the law to be clearly established is without merit.  "[A] general constitutional rule already identified in the decisional law may apply

9

with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Shekleton v. Eichenberger*, 677 F.3d 361, 367 (8th Cir. 2012) (cleaned up). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Based on the allegations in the Complaint, the right under the Fourth Amendment to be free from excessive force under the circumstances at issue was clearly established at that time. *See Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953–54 (8th Cir. 2024) ("[I]f a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force.") (collecting cases); *see also Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022) (holding it was clearly established that using more than *de minimis* force violates the Fourth Amendment when the plaintiff, suspected of nonviolent misdemeanors, posed no threat, stood with his hands raised, and was not fleeing or resisting arrest at the time the force was used); *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009) (holding the law was clearly established "that it was unlawful to taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety," and whose only noncompliance was not threatening, belligerent, or violent); *Brossart v. Janke*, 859 F.3d 616, 625 (8th Cir. 2017) ("prior cases have clearly established that 'use of [a] taser on a nonfleeing, nonviolent suspected misdemeanant [is] unreasonable"); *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) ("Law enforcement officers may use physical force to subdue an arrestee when

10

he fails to comply with orders to lie still during handcuffing.")

Because Banks has sufficiently alleged a violation of a clearly established constitutional right, Whistler, Blanner, and Hulvey are not entitled to dismissal based on qualified immunity.  Therefore, the motion to dismiss the claim against them in Count I is denied.

### B. Count II – Municipal Liability claim

Under § 1983, a municipality cannot be held liable "solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, a municipality may be liable only for a constitutional violation that resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Banks asserts that the City of Cape Girardeau has a custom of permitting police officers to use excessive force, which is endorsed by city officials, as evidenced by their failure to discipline officers for improper use of force.

To state a claim for custom liability, Banks must allege facts that demonstrate:

a)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by a governmental entity's employees;

b)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

c)  That [he] was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (cleaned up). Liability for an unconstitutional custom cannot arise from a single act.  *Id*.  "The pattern

11

of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (cleaned up).

The City of Cape Girardeau argues that the municipal liability claim must be dismissed because the allegations are insufficient to establish a pattern. "The Eighth Circuit has not directly addressed the quantum of continuing, widespread, persistent conduct a plaintiff must allege to satisfy the *Iqbal* standard in [the motion to dismiss] context." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (cleaned up). In the summary judgment context, the Eighth Circuit has held that, "two incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct." *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018). And, at the other end of the spectrum, it has adjudged that "copious evidence of past misconduct," including corroborated testimony that a city had received "many citizen complaints," does constitute sufficient evidence to establish a municipal custom. *Harris v. City of Pagedale*, 821 F.2d 499, 504-06 (8th Cir. 1987) (finding the plaintiff proved the existence of a municipal custom based on detailed evidence regarding the particular police officer's previous misconduct and the city's failure to investigate or punish that conduct).

In the context of a motion to dismiss, rulings in this district have found that claims of prior unconstitutional conduct, which exceeded the number of prior excessive force incidents alleged by Banks, were insufficient to establish a custom. *See, e.g. Ball-Bey*, 415 F. Supp. 3d at 895 (finding fourteen instances alleged by the plaintiff over a six-year period in a city with 319,000 residents did not plausibly suggest the existence of a

12

widespread, persistent pattern of unconstitutional misconduct); *Naes v. City of St. Louis*, 4:19-CV-02132-SEP, 2020 WL 6044356 (E.D. Mo. Oct. 13, 2020) (finding five instances of misconduct over more than five years are insufficient to establish a continuing, widespread, persistent pattern of unconstitutional conduct); *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 620-21 (E.D. Mo. 2019) (finding "two or three" instances of unconstitutional conduct a year apart does not establish a custom).

Further, Banks cannot rely on settlements to prove a custom.³ *Naes v. City of St. Louis*, 4:19-CV-02132-SEP, 2021 WL 6049815 (E.D. Mo. Dec. 21, 2021) (citing Fed R. Evid. 408; *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966 (8th Cir. 2011).  The mere fact that a complaint for excessive force was filed and eventually settled does not, in and of itself, prove the use of excessive force. *Ball-Bey v. Chandler*, 4:18-cv-01364-SPM, 2020 WL 6708516, at *9 (E.D. Mo. Nov. 16, 2020) (quoting *Simpson v. Ferry*, 202 F. Supp.3d 444, 453 (E.D. Pa. 2016) ("mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom").  This is especially true of complaints that are still pending.

Considering the allegations in the Complaint within the relevant legal framework, the three incidents of alleged use of excessive force by officers in 2020, 2021, and 2022 are insufficient to establish a continuous, widespread, and persistent pattern.  Banks also asserts a failure to train or supervise by the City of Cape Girardeau as a basis for municipal liability.  That claim fails for the same reason as the custom claim.  Banks has

---

³ Under certain circumstances, prior settlements may show notice of an unlawful custom. *Naes v. City of St. Louis*, 4:19-CV-02132-SEP, 2021 WL 6049815 (E.D. Mo. Dec. 21, 2021).

not alleged sufficient facts to support the existence of a continuing, widespread, persistent pattern of the use of excessive force. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* failure to train or supervise claim where the plaintiff failed to allege sufficient facts demonstrating the existence of a custom that caused the alleged deprivation of the plaintiff's rights).

Because Banks has not alleged sufficient facts to support a municipal liability claim against the City of Cape Girardeau, Count II is dismissed. The Court is cognizant that "[w]hen a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). If Banks discovers more instances of police officers using excessive force in the City of Cape Girardeau sufficient to demonstrate a continuing, widespread, and persistent pattern, he may seek leave to amend the Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss [Doc. 11] is **GRANTED in part** and **DENIED in part** as set forth herein.

**IT IS FURTHER ORDERED** that defendants' Motion to Dismiss [Doc. 11] is **GRANTED** as to the claim in Count II against defendant City of Cape Girardeau. The claim in Count II and defendant City of Cape Girardeau are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss [Doc. 11] is **DENIED** as to the claim in Count I against defendants Joseph Whistler, Bryan Blanner, and Zane Hulvey.

**IT IS FURTHER ORDERED** that defendants' Motion for Sealing Exhibits [Doc. 14] is **DENIED,** and the exhibits are **STRICKEN** from the record.  The Clerk of Court is **DIRECTED** to return the exhibits to defendants' counsel of record.

**IT IS FINALLY ORDERED** that this matter will be scheduled for a Rule 16 conference by separate Order.

**SO ORDERED** this 2nd day of September, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE